UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NUMBER 22-092 |
| DAMION WILSON | * | SECTION "I" |

**MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO SUPPRESS EVIDENCE AND STATEMENTS</u>**

Damion Wilson has moved this Court to suppress all evidence and statements obtained by law enforcement officers in violation of his Fourth Amendment rights. For the reasons described herein, he respectfully urges the Court to grant his motion, or in the alternative, hold an evidentiary hearing at which he may further support the motion. The government violated Mr. Wilson's Fourth Amendment rights when New Orleans Task Force officers stopped him without reasonable suspicion. The fruits of this illegal encounter—the Glock .9mm handgun, marijuana found inside a backpack and inside 4025 W. Napoleon Ave, Apt 323, Metairie, Louisiana, and any post-seizure statements—must be suppressed, and the Court should grant Mr. Wilson's motion.

**I.     The Fourth Amendment framework.**

"The Fourth Amendment proscribes 'unreasonable searches and seizures.'" *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011) (quoting U.S. Const. amend IV). Where, as here, a person is seized without a warrant, the government bears the burden of justifying that seizure by proving that it falls within an exception to the warrant requirement. *See, e.g.*, *United States v. Roch*, 5 F.3d 894 (5th Cir. 1993).

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court "created an exception to the [Fourth Amendment] requirement of probable cause, an exception whose 'narrow scope,' [the] Court 'has

been careful to maintain.'" *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979) (quoting *Dunaway v. New York*, 442 U.S. 200, 210 (1979)). Under *Terry*, a police officer may conduct a brief investigatory stop when the officer has reasonable suspicion based on articulable facts that a crime has been committed. *Terry*, 392 U.S. at 30. While reasonable suspicion is a "less demanding" standard than probable cause and requires a showing "considerably less than proof of wrongdoing by a preponderance of the evidence," the Fourth Amendment requires at least "'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Terry*, 392 U.S. at 27. The *Terry* stop doctrine "represents a very narrow exception" which must be guarded carefully. *United States v. Tookes*, 633 F.2d 712, 715 (5th Cir.1980) (citation omitted).

Under the fruit of the poisonous tree doctrine, "all evidence derived from the exploitation of an illegal seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *United States v. Portillo-Aguirre*, 311 F.3d 647, 658 (5th Cir. 2002). "Verbal statements, in addition to physical evidence, are subject to the exclusionary rule." *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012).

**II.     Events leading to the illegal detention of Mr. Wilson.**

On the morning of March 16, 2022, Mr. Wilson exited his apartment at 4025 W. Napoleon Avenue in Metairie, Louisiana.[1] After he walked down the exterior stairs of his apartment building, New Orleans Task Force (NOTF) Officer King Tao and Deputy U.S. Marshal (DUSM) Michael Atkins approached Mr. Wilson, pointed their guns at him, and ordered him to put all of his belongings on the ground and to put his hands up.[2] According to the U.S. Marshals Service (USMS) report, as Mr. Wilson was walking down the stairs, DUSM Atkins saw what looked to him like a "bulge object" around Mr. Wilson's waist.[3] Mr. Wilson complied, placing his backpack, phone, and keys on the ground, and putting his hands in the air.[4]

According to the USMS report, DUSM Atkins and Officer Tao sought out Mr. Wilson because they believed that he knew Malik Fernandez, who the USMS had been tasked with apprehending.[5]

**III.    The NOTF officers stopped Mr. Wilson without reasonable suspicion.**

*A. Mr. Wilson was seized when he complied with the order to put his hands up.*

A seizure occurs "when someone submits to a governmental show of authority that would cause a reasonable person to believe that she was not free to leave." *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022); *see also United States v. Mendenhall*, 446 U.S. 544, 553 (1980)

---

[1] *See* Defendant's Exhibit B: USMS report of investigation, Discovery Bates Stamp at 00083.

[2] *See* Defendant's Exhibit A: Affidavit in Support of Motion to Suppress; Defendant's Exhibit B at 00083.

[3] *See* Defendant's Exhibit B at 00083.

[4] *See* Defendant's Exhibit A.

[5] *See* Defendant's Exhibit B at 00083.

("[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."). While point of seizure is fact-specific, a non-exhaustive list of considerations is instructive: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *United States v. Mask*, 330 F.3d 330, 337 (5th Cir. 2003) (citing *Mendenhall*, 446 U.S. at 554).

When DUSM Atkins and Officer Tao pointed their weapons at Mr. Wilson and ordered Mr. Wilson to put his hands up, Mr. Wilson's "freedom of movement [was] restrained." *Mendenhall*, 446 U.S. at 553. Given "the threatening presence of several officers," "the display of a weapon by [officers]," and the "use of language . . . indicating that compliance with the officer's request might be compelled," a reasonable person would not believe that he was free to leave. *Mask*, 330 F.3d at 337; *see also Gentry v. Sevier*, 597 F.3d 838, 844 (7th Cir. 2010) ("When the officers pulled up in their patrol car and one officer exited the car and told Gentry to 'keep [his] hands up,' the officer executed a *Terry* stop."); *McKinney*, 980 F.3d at 491 (holding that defendant was seized when officer "shined his flashlight on the woman who appeared to be walking away and ordered that she return"); *Hill*, 752 F.3d at 1033 (holding that defendant was seized when the officer "ordered [him] to exit the car and gestured for him to turn around and put his hands on the car so that he could be frisked"); *United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000) (holding that officer "made a show of authority" when he "drew his gun and ordered Johnson to raise his hands"). By submitting to that show of authority, Mr. Wilson was seized. *See California v. Hodari D.*, 499 U.S. 621, 626-28 (1991).

*B. The officers did not have reasonable suspicion to stop Mr. Wilson.*

The government cannot show that there was reasonable suspicion to stop Mr. Wilson at the moment he complied with the order to put his hands up. Reasonable suspicion is fact-sensitive and not capable of precise articulation, but at a minimum, the officer must be able to point to "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). An officer's belief "that a particular person is committing, or is about to commit, a crime," *id.*, such that a Terry stop is permissible, "must be founded on specific and articulable facts rather than on a mere suspicion or 'hunch.'" *Hill*, 752 F.3d at 1033. Because a seizure under the Fourth Amendment "must be justified at its inception," *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020), when evaluating whether reasonable suspicion existed, courts may consider only facts known to law enforcement at the time of the seizure. *See United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

The fact that DUSM Atkins perceived a "bulge object" at Mr. Wilson's waist as the officers approached him does not amount to reasonable suspicion, even if DUSM Atkins reasonably believed that the bulge was a concealed firearm. First, an officer's belief that an individual is carrying a concealed firearm is, without more, insufficient to constitute reasonable suspicion of a crime in Louisiana, where permits to carry a concealed firearm "shall issue" to any person who meets the qualifications. *See* LA. REV. STAT. ANN. § 40:1379.3(A). In *United States v. Brown*, the Ninth Circuit held that information from an anonymous tipster that an individual in Washington State was carrying a concealed firearm did not amount to reasonable suspicion of a crime. 925 F.3d 1150, 1154 (9th Cir. 2019). The Ninth Circuit reasoned that "[i]n Washington State, it is

5

presumptively lawful to carry a gun" because "Washington is a 'shall issue state,' meaning that local law enforcement *must* issue a concealed weapons license if the applicant meets certain qualifications."[6] *Id.*

The same reasoning applies to Louisiana. As noted, Louisiana is a "shall issue state," and the requirements for obtaining a permit are not burdensome, primarily relating to age, mental fitness, immigration status, and criminal history.[7] LA. REV. STAT. ANN. § 40:1379.3(C). In addition, as of November 10, 2022, there were 122,662 active concealed carry permits in Louisiana, amounting to 3.7% of the adult population (21 years or older). *See* U.S. Census Bureau, 2021 American Community Survey 1-Year Estimates, Table DP05: ACS Demographic and Housing Estimates, available at https://data.census.gov/cedsci/table?g=0400000US22&tid=ACSDP1Y2021.DP05; Louisiana State Police, Concealed Handgun Permit Unit (contacted by telephone Nov. 10, 2022). And this statistic likely *under*estimates the number of people holding concealed carry permits in Louisiana at any given time because Louisiana also recognizes as valid out-of-state permits issued by all but twelve states. *See* La. Rev. Stat. Ann. § 40:1379.3(T)(2); Louisiana State Police, Concealed Handgun Permit Unit, Reciprocity, http://www.lsp.org/handguns.html#recip. Because concealed carry permits are readily accessible and held by a significant percentage of the population in Louisiana, there was no basis for DUSM

---

[6] The Ninth Circuit later distinguished *Brown* in a case arising out of California, holding that an anonymous tip that a person was carrying a concealed firearm could support reasonable suspicion there because "the reasonable suspicion analysis is different in a jurisdiction that has different rules for carrying concealed weapons." *United States v. Bontemps*, 977 F.3d 909,

[7] Notably, there was no reason for the officers here to believe at the time they stopped Mr. Wilson that he did not meet the statutory criteria.

6

Atkins and NOTF Officer Tao to presume that Mr. Wilson was committing a crime solely based on the belief that he was carrying a concealed firearm.

Neither caselaw nor treatises support the position that the officers here had reasonable suspicion that Mr. Wilson had committed or was in the process of committing a crime. Counsel has been unable to identify a single case in which the Fifth Circuit has held that the fact that a person was carrying a concealed firearm was alone sufficient to justify a *Terry* stop. And a leading Fourth Amendment treatise states the opposite:

> For example, if a policeman sees a suspicious bulge which possibly could be a gun in the pocket of a pedestrian who is not engaged in any suspicious conduct, the officer may not approach him and conduct a frisk. And this is so even though the bulge would support a frisk had there been a prior lawful stop.

W. LaFave & A. Scott, 4 Search & Seizure § 9.6(a) (6th ed. Oct. 2022).

Importantly, the rule identified here—that carrying a concealed firearm does not alone amount to reasonable suspicion or justify a *Terry* stop—would not have prevented officers from approaching Mr. Wilson to ask questions consensually, either about the whereabouts of Mr. Fernandez or about whether Mr. Wilson was carrying a firearm. Nor would it prevent officers from conducting a *Terry* stop when there is reasonable suspicion that a person is carrying a concealed weapon *without a permit*. But here there were no facts to support any suspicion that Mr. Wilson did not have a permit. Mr. Wilson was 21 years of age at the time of his arrest, is a United States citizen, and had never been convicted of a crime. La. Rev. Stat. Ann. § 40:1379.3(C)(4), (6), (10), (14). Therefore, the NOTF officers lacked reasonable suspicion that

7

Mr. Wilson had committed or was in the process of committing a crime when they stopped him outside of his apartment.[8]

## IV. All of Mr. Wilson's statements and any physical evidence seized as a result of this illegal detention should be suppressed.

Once a defendant proves a Fourth Amendment violation, "the burden shifts to the government to demonstrate why the exclusionary rule should not apply to the fruits of the illegal search or seizure." *United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001). Here, as to the evidence recovered on Mr. Wilson's person, in his backpack, and in his apartment, as well as statements made by Mr. Wilson, the government cannot show "that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *Portillo-Aguirre*, 311 F.3d at 658.

First, because the officers' seizure of Mr. Wilson was without reasonable suspicion and, therefore, illegal, any evidence recovered on Mr. Wilson's person during the stop should be suppressed. *See id.*

Second, any evidence found on Mr. Wilson's person or in his backpack as a result of the search incident to arrest should be suppressed. It is well established that the exclusionary rule "excludes not only the illegally obtained evidence itself, but also other incriminating evidence derived from that primary evidence." *Runyan*, 275 F.3d at 466. The test for determining whether

---

[8] The fact that the NOTF officers had reason to believe that Mr. Wilson knew Mr. Fernandez or had merely been seen with him does not support reasonable suspicion of a crime. "There is no reasonable suspicion merely by association." *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013); *cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

evidence is "fruit of the poisonous tree" is "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v*, 371 U.S. 471 at 488 (quoting R. Maguire, Evidence of Guilt 221 (1959)). Subsequently-obtained evidence is "derivative" and thus subject to exclusion where it "is the product of the primary evidence, or . . . is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray v. United States*, 487 U.S. 533, 536–37 (1988). Here, Mr. Wilson was arrested for unlawfully possessing the firearm found on his person during the illegal stop. Thus, any evidence discovered in the search incident to arrest "is the product of the primary evidence," and should be excluded. *Id.*

Third, all evidence recovered inside Mr. Wilson's apartment should be suppressed. The warrant to search Mr. Wilson's apartment was premised entirely on (1) the firearm found on Mr. Wilson's person during the illegal stop, and (2) the marijuana found in a backpack during the search incident to his arrest for the possession of that firearm.[9] As such, there was no attenuation between the initial illegal stop and the search of Mr. Wilson's apartment that would "dissipate the taint." *Murray*, 487 U.S. at 537.

Finally, any statements made by Mr. Wilson during the stop should be excluded as fruit of the poisonous tree. Given the unique nature of testimonial evidence, courts consider whether "any

---

[9] *See* Defendant's Exhibit C: 24th Judicial District Court warrant application at 2-3.

intervening event of significance" purged the taint of the illegal seizure before the statements were made. *Dunaway v. New York*, 442 U.S. 200, 218 (1979). "'Intervening events of significance' include, for example, an appearance before a magistrate or consultation with an attorney." *United States v. Hernandez*, 670 F.3d 616, 622-23 (5th Cir. 2012). No such intervening event occurred before Mr. Wilson's statements. Immediately after the initial illegal stop and during the ongoing illegal seizure, DUSM Atkins asked Mr. Wilson about whether he had a concealed carry permit,[10] and "[m]erely questioning a suspect is insufficient to constitute an intervening event of significance." *See id.* at 622-23. Neither does the USMS report identify any "intervening event of significance" between the illegal seizure of Mr. Wilson and the officers' questioning about Malik Fernandez.[11] *Cf. id.* at 622 ("Here, the fact that the officer informed Hernandez about the anonymous tip after or during the course of the Fourth Amendment violation is not an 'intervening event of significance.'"). Because there were not "intervening event[s] of significance" between the illegal seizure and any statements made by Mr. Wilson, those statements must be suppressed. *Dunaway*, 442 U.S. at 218.

## CONCLUSION

For the reasons discussed above, Mr. Wilson respectfully requests that this Court suppress all evidence found on Mr. Wilson's person, in his home, and as a result of the search incident to arrest, as well as any statements made by Mr. Wilson, on March 16, 2022. Alternatively, he requests an evidentiary hearing to address the constitutional issues discussed above.

---

[10] *See* Defendant's Exhibit B at 00083.

[11] *See* Defendant's Exhibit B at 00083.

Respectfully submitted, the 30th day of November, 2022.

        CLAUDE J. KELLY
        Federal Public Defender

        /s/Annalisa Mirón
        ANNALISA MIRÓN
        Assistant Federal Public Defender
        500 Poydras Street, Suite 318
        Hale Boggs Federal Building
        New Orleans, Louisiana 70130
        Telephone: (504) 589-7930

# CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Maurice Landrieu, Assistant United States Attorney, 650 Poydras Street, 16th Floor, New Orleans, Louisiana 70130**.** I further certify that emailed the foregoing document and the notice of electronic filing to the following non-CM/ECF participants: n/a.

                                                     /s/Annalisa Mirón  
                                                     ANNALISA MIRÓN  
                                                     Assistant Federal Public Defender