# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 22-92** |
| **DAMION WILSON** | **SECTION I** |

## ORDER & REASONS

Before the Court are two motions[1] to suppress evidence filed by defendant Damion Wilson ("Wilson"). The government opposes the motions.[2] For the reasons below, the Court denies the motions.

## I.     BACKGROUND

Wilson is charged in this matter with two counts of possession with intent to distribute marijuana, two counts of possession of a firearm in furtherance of a drug trafficking crime, one count of maintaining a drug-involved premises, and one count of making a false statement to a federal agent.[3] These charges arise from incidents that occurred on July 15, 2021 (counts 1 and 2) and March 16, 2022 (counts 3, 4, and 6).[4]

Each of Wilson's motions relates to separate factual circumstances. On July 15, 2021, Wilson was the subject of a traffic stop by New Orleans Police Department ("NOPD") officers, during which, he alleges, his car was unlawfully searched.[5] On

---

[1] R. Doc. Nos. 30, 67.
[2] R. Doc. Nos. 47, 69.
[3] R. Doc. No. 1.
[4] In Count 5, Wilson is charged with maintaining a drug-involved premises between the dates of July 1, 2021, and March 16, 2022.
[5] R. Doc. No. 67.

March 16, 2022, Wilson was stopped by officers outside of his apartment. He argues that the officers lacked reasonable suspicion to initiate the stop,[6] and that the ensuing search of his backpack was not a valid search incident to arrest.[7] He argues that evidence discovered during these encounters should be suppressed.

The Court held two evidentiary hearings with regard to the events giving rise to the first motion.[8] In connection with the second motion, the government provided body camera footage of the traffic stop.[9]

### a. Traffic Stop

On July 15, 2021, Wilson was stopped by two New Orleans Police Department officers for a traffic violation.[10] As stated in Wilson's motion, after Wilson was stopped, one of the officers "observed a clear plastic bag in plain view on the passenger seat" containing "vegetable matter."[11] Wilson was then asked to exit the car, was handcuffed, and was placed in the back of a police car.[12] The officers then searched Wilson's car, as well as a backpack that was located in the backseat of his car.[13] The officers discovered a handgun under the driver's seat, and "vegetable matter," plastic bags, a digital scale, and currency in the backpack.[14]

---

[6] R. Doc. No. 30.
[7] R. Doc. No. 70.
[8] *See* R. Doc. Nos. 63, 64, 72.
[9] *See* R. Doc. No. 69.
[10] Wilson and the government agree on the facts recounted in this section, and the facts are further supported by the body camera footage provided by the government.
[11] R. Doc. No. 67-1, at 1.
[12] *Id.*
[13] *Id.*
[14] *Id.*

### b. Apartment

The March 16, 2022 incident arises from an investigation into the whereabouts of Malik Fernandez ("Fernandez"), who was wanted on federal charges related to a December 2020 shootout at the Jung Hotel in New Orleans.[15] Investigating agents, who were told that Wilson and Fernandez were friends and were likely to be together, tracked Wilson to an apartment in Metairie, Louisiana.[16] Other residents at the apartment complex stated that they had seen Wilson and Fernandez at the complex.[17]

While waiting outside the apartment complex, agents observed Wilson exit the apartment.[18] The agents approached Wilson. Deputy United States Marshal Michael Atkins ("Atkins") stated that, as he approached Wilson, he "immediately noticed a bulge in [Wilson's] waist area" that appeared to be "a hard object."[19] Believing the object to be a concealed weapon, the agents ordered Wilson to stop and put his hands up.[20]

After Wilson put his hands up, the agents asked Wilson if he was carrying a firearm, to which he responded affirmatively.[21] The agents ordered Wilson to drop the bag he was carrying.[22] Wilson did so, turned around, and placed his hands behind

---

[15] R. Doc. No. 71-1, at 6–8. Facts related to the March 16, 2022 incident are drawn from testimony offered at the evidentiary hearings held on April 4, 2023 and May 3, 2023.
[16] *Id.* at 8–9.
[17] *Id.* at 9:16–10:3.
[18] *Id.* at 10:18–:19.
[19] *Id.* at 13:3–:11.
[20] *Id.* at 14:12–:19.
[21] *Id.* at 13:22–:25.
[22] *Id.* at 14:3–:4.

his back.[23] As Wilson was being handcuffed, Atkins asked Wilson if he had a permit to carry the firearm.[24] Wilson responded that he did not.[25] The officers took the gun from Wilson.[26] Atkins informed Wilson that he was not under arrest and that they wanted to talk to him about Fernandez.[27] Wilson responded that he had not seen Fernandez in six years.[28]

At that point, Atkins relocated Wilson to their car to continue discussions with him.[29] Atkins stated that he decided to continue the conversation in the car in order to "have a one-on-one conversation with him so people don't see him talking to the police."[30] Wilson continued to insist that he had not seen Fernandez in six years.[31] Atkins stated that he knew this to be false because others had told him that Wilson and Fernandez had recently been together.[32] Atkins informed Wilson that lying to a federal agent was a crime, but Wilson continued to state that he had not seen Fernandez in six years.[33]

---

[23] *Id.* at 14:4–:5.
[24] *Id.* at 14:6–:10.
[25] *Id.* at 14:9–:10.
[26] *Id.* at 14:14–:15.
[27] *Id.* at 15:9–:11.
[28] *Id.* at 15:11–:12.
[29] *Id.* at 15:13–:16.
[30] Id. at 15:16–:17.
[31] *Id.* at 15:21.
[32] *Id.* at 15:21–:25.
[33] *Id.* at 16:1–:9. At this point, Atkins pulled up an Instagram profile associated with the username that appeared on Wilson's baseball cap, where he observed a photo from four months prior that pictured Wilson with Fernandez. *Id.* at 16:17–17:2.

After this conversation,an officer from the Jefferson Parish Sheriff's Department placed Wilson under arrest for the illegal carrying of a firearm.[34] That officer then opened the backpack that Wilson had been carrying when he was initially stopped, where he found "a large bag of green leafy substance" and a scale.[35] The backpack did not enter the agent's car with Wilson; instead it stayed on the ground where Wilson was initially handcuffed.[36] Testimony indicated that approximately 25 to 30 minutes elapsed between the time Wilson was stopped and the search of his backpack.[37]

After the search of the backpack, the Jefferson Parish officers obtained a search warrant for the apartment and Wilson's vehicle.[38] The U.S. Marshals searched the apartment to determine if Fernandez was there, but they did not find him.[39] The officers did find additional marijuana and drug paraphernalia in the apartment.[40]

## II.    LAW & ANALYSIS

"The Fourth Amendment proscribes 'unreasonable searches and seizures.'" *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011) (quoting U.S. Const. amend. IV). "Reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (citation omitted).

---

[34] *Id.* at 17:14–:17.
[35] *Id.* at 17:17–:21.
[36] *Id.* at 18:9–19:1.
[37] R. Doc. No. 79, at 8:2–:7.
[38] R. Doc. No. 71-1, at 19:17–:19.
[39] *Id.* at 19:20–:25.
[40] *Id.* at 20:1–:5.

The exclusionary rule "operates by generally barring the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019) (cleaned up) (quotations and citation omitted). "The purpose of the rule is to deter violations of the Fourth Amendment—not to redress the injury of the victim of an unreasonable search or seizure." *Id.* (citations omitted).

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993). "However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citation omitted).

### a. Traffic Stop

Wilson argues that evidence obtained and statements made during the traffic stop should be suppressed because, when the search of his car and backpack was performed, Wilson "was handcuffed and in the back of a" police car.[41]

Wilson relies on *Arizona v. Gant*, in which the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee

---

[41] R. Doc. No. 67-1, at 4. Though Wilson argues that "any statements made" during the traffic stop should be suppressed, he does not identify any specific statements that should, in his view, be suppressed. Additionally, Wilson's only argument as to why any statements should be suppressed is that they are fruit of the poisonous tree. *Id.* at 6. Because the Court concludes that there was no Fourth Amendment violation, there is no poisonous tree, and Wilson's argument must be rejected.

is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." 446 U.S. 332, 351 (2009) (emphasis added). The portion of *Gant* that Wilson cites makes clear that search of an automobile incident to arrest is constitutional if *either* the arrestee is in reaching distance of the passenger compartment *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest. Wilson, however, only focuses on the first circumstance, emphasizing that the car was searched after he had been placed in the police car. He does not argue that it was not reasonable for the officers to believe that the vehicle contained evidence of the offense of arrest.

Wilson states that he "was detained and placed in the back of a" police car "[u]pon [the officers] observing vegetable matter on the front[ ] passenger seat."[42] The government states that the "traffic stop evolved into a drug investigation" when "the officers observed a bag of marijuana in plain view on the front passenger seat."[43] The body camera footage likewise shows that Wilson was detained and handcuffed after the officers observed what appeared to be marijuana in Wilson's car.

Neither party's briefing clearly addressed what offense(s) Wilson was arrested for. However, counsel for both parties agreed that Wilson was charged by state authorities with possession with intent to distribute marijuana in connection with the July 15, 2021 traffic stop. There is no dispute, therefore, that Wilson was arrested for suspicion of possession of contraband. And, because that possible contraband was

---

[42] *Id.* at 4.
[43] R. Doc. No. 69, at 6.

observed in Wilson's car, it was reasonable for the officers to believe that the car contained further evidence of the offense of arrest. *Gant*, 446 U.S. at 351; *United States v. Clark*, 647 F. App'x 419, 421, (5th Cir. 2016) (per curiam) (holding that a search of the defendant's car, which took place 15 to 30 minutes after his arrest on suspicion of selling heroin, was a valid search incident to arrest because the officers reasonably believed that "they would find evidence related to the distribution of heroin" in the car).

Moreover, "[u]nder the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (citation omitted). "Probable cause to search an automobile exists where trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband." *United States v. Castelo*, 415 F.3d 407, 412 (5th Cir. 2005) (quotations and citation omitted). "The [automobile] exception is justified by the mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads." *Beene*, 818 F.3d at 164 (citation omitted). "In a vehicle stop on a highway, the fact of the automobile's potential mobility supplies the requisite exigency" needed to justify the search. *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (quotation and citation omitted).

The automobile exception also extends to containers within the automobile. *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile

*and the containers* within it where they have probable cause to believe contraband or evidence is contained."); *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) ("When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one.").

Observation of marijuana in plain view during a traffic stop provides probable cause for a warrantless search of a car. *See United States v. Phillips*, 261 F. App'x 740, 741 (5th Cir. 2008) (affirming denial of motion to suppress where the district court found that the defendant had marijuana in plain view on his dashboard during a traffic stop). Wilson acknowledges that the officers conducting the traffic stop "observed a clear plastic bag in plain view on the passenger seat" that contained "vegetable matter."[44] This observation therefore justified the warrantless search of the car and the backpack in the back seat. *Acevedo*, 500 U.S. at 580; *Houghton*, 526 U.S. at 302.

For all the reasons stated above, the Court finds that the search of Wilson's car and backpack were reasonable under the circumstances and not violative of the Fourth Amendment. His motion to suppress the evidence discovered therein will therefore be denied.

---

[44] R. Doc. No. 67-1, at 1.

### b. Apartment Incident

i.    *Whether There Was Reasonable Suspicion to Stop Wilson*

Wilson argues that the officers lacked reasonable suspicion to stop him when they observed a bulge in his waistband because "an officer's belief that an individual is carrying a concealed firearm is, without more, insufficient to constitute reasonable suspicion of a crime in Louisiana, where permits to carry a concealed firearm 'shall issue' to any person who meets the qualifications."[45] Wilson relies on a case in which the Ninth Circuit held that, in Washington, where state law provides that a concealed weapons license "shall issue" to individuals who meet certain requirements, the mere fact that someone is carrying a concealed weapon is not a basis for a *Terry* stop. *See United States v. Brown*, 925 F.3d 1150, 1153–54 (9th Cir. 2019).[46] Louisiana law likewise provides that concealed carry licenses "shall issue" to those who meet the statutory requirements. La. Rev. Stat. Ann. § 40:1379.3(A).

The Court has not identified any Fifth Circuit case law addressing whether the fact that a person was carrying a concealed firearm is, alone, enough to arouse reasonable suspicion to justify a *Terry* stop.[47] In general, courts have held that, where

---

[45] R. Doc. No. 30-1, at 5.

[46] The relevant Washington law further provided that "a person shall not carry a pistol concealed on his or her person without a license to carry a concealed pistol." Rev. Code Wash. § 9.41.060.

[47] Pursuant to *Terry v. Ohio*, police may detain a person if they have reasonable suspicion, based on specific and particularized facts, that the person is involved in criminal activity. The police may then conduct a search of the person if they have reasonable suspicion that the person is armed and dangerous. 392 U.S. 1 (1968). Only the first Terry prong (reasonable suspicion that the person is involved in criminal activity justifying a stop) is at issue here.

carrying a firearm is "presumptively illegal," possession of a firearm may, on its own, support a *Terry* stop. *See United States v. Williams*, No. 19-662, 2021 WL 25550, at *8 n.5 (N.D. Ill. Jan. 1, 2021) (collecting cases).

The Eighth Circuit has held that a police "officer had reasonable suspicion that criminal activity was afoot when he personally observed [an individual] place the gun in his waistband" in Iowa, where carrying a concealed weapon is a criminal offense unless one has a license to do so.[48] *United States v. Pope*, 910 F.3d 413, 415–16 (8th Cir. 2018). The court noted that "possession of a concealed-weapons permit is merely an affirmative defense" to a concealed weapons charge. *Id.* The Eleventh Circuit has similarly held that an individual's "admission to carrying a concealed weapon was sufficient to justify briefly stopping him *before* inquiring further about whether he had an affirmative defense in the form of a valid concealed-weapons permit." *United States v. Lewis*, 674 F.3d 1298, 1304 (11th Cir. 2012) (emphasis added). The court reasoned that "[t]he Supreme Court has made it abundantly clear that, although an individual may ultimately be engaged in conduct that is perfectly lawful . . . officers may 'detain the individual[ ] to resolve the ambiguity.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

The Eleventh Circuit in *Lewis*, like the Eighth in *Pope*, noted that "the possession of a valid permit for a concealed weapon is not related to the elements of the crime [of unlawful possession], but rather is an affirmative defense." *Id.* Louisiana

---

[48] Iowa law has since been amended so that a permit is not generally required to carry a concealed weapon. *See* Iowa Code § 724.4 (effective July 1, 2021).

law prohibits "[t]he intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person" and provides that this prohibition "shall not apply to a person with a valid concealed handgun permit." La. Rev. Stat. Ann. § 14:95(A)(1)(a), (b). Like the Florida law in effect at the time of *Lewis*,[49] therefore, Louisiana law makes the carrying of a concealed firearm "presumptively unlawful" and therefore likely justifies a *Terry* stop. Accordingly, the Court holds that the officers had reasonable suspicion to stop Wilson when they observed what appeared to be a concealed weapon on his person.[50]

### ii.    *Whether the Search of Wilson's Backpack Was Justified*

During the first evidentiary hearing on this motion, the Court questioned the parties regarding, and ultimately ordered additional briefing on, the issue of whether the search of Wilson's backpack was a valid search incident to arrest. As noted above, Wilson placed the backpack on the ground when he was initially stopped, and the backpack was searched 25 to 30 minutes later, after Wilson had been placed in the back of the police car. Wilson argues that the search of the backpack was not a valid

---

[49] The Florida statute prohibiting possession of a concealed weapon provided that "[t]his section does not apply to a person licensed to carry a concealed weapon or a concealed firearm." Fla. Stat. Ann. § 790.01(3) (2012).

[50] The Court also notes that the Ninth Circuit's decision in *Brown* is factually distinguishable from the instant matter because, in *Brown*, the stop of the defendant was based on an anonymous tip which "created at most a very weak inference that he was unlawfully carrying the gun without a license" and was not sufficient in and of itself to support reasonable suspicion. 925 F.3d at 1154. In the instant matter, the officers personally observed the bulge on Wilson's person and, when asked, Wilson confirmed that it was a concealed firearm for which he did not have a permit.

search incident to arrest "because [the backpack] was not within the area of Mr. Wilson's immediate control" when it was searched.[51]

The government counters that searches incident to arrest are not so narrowly circumscribed. It cites several cases in which courts have upheld searches of containers carried by arrestees as valid searches incident to arrest, even where the container was not within the arrestee's immediate reach and the arrestee was restrained. It further argues that, even if the search of the backpack was not a valid search incident to arrest, it was valid under the inevitable discovery and inventory search doctrines.

The inevitable discovery doctrine "provides that otherwise suppressible evidence will be admitted if that evidence would inevitably have been discovered by lawful means." *United States v. Walker*, 49 F.4th 903, 909 (5th Cir. 2022) (cleaned up) (quotations and citation omitted). The exception applies if "the [g]overnment demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) that the [g]overnment was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Id.* (quotation and citation omitted).

The Fifth Circuit has "suggested that the second element of the inevitable discovery rule may be superfluous." *United States v. Salinas*, 543 F. App'x 458 (5th Cir. 2013) (citation omitted). Other courts have held that the second prong is satisfied

---

[51] R. Doc. No. 70, at 4.

where the officers "could have obtained a warrant but did not do so because of the time involved and because [they] had probable cause to search the backpack incident to arrest," *United States v. Trogdon*, No. 21-2089, 2022 WL 2093858, at *2 (8th Cir. 2022) (per curiam), and where the officer "was at least disposed to execute an alternative plan . . . even if he did not consciously have such a plan in mind." *United States v. Baez*, 983 F.3d 1029, 1040 (8th Cir. 2020).

Courts have applied the inevitable discovery doctrine in circumstances similar to those presented here. *E.g.*, *Trogdon*. 2022 WL 2093858, at *2 (finding that evidence discovered in a warrantless search of the defendant's backpack "would have been discovered during a lawful inventory search of the backpack" because the officer who searched the backpack testified that he would have arrested her for theft if he had not searched her backpack, and that the backpack would have been searched when she arrived at jail); *see also United States v. Jean*, 636 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (applying the inevitable discovery doctrine to the search of a backpack that was carried on the defendant's person at the time of arrest).

In Wilson's case, Atkins testified that the officers who arrested Wilson would have needed to take an inventory of Wilson's backpack after they arrested him.[52] The witness at the second evidentiary hearing, a detective with the Jefferson Parish Sheriff's Office who searched the backpack, likewise testified that he would have had to search the bag when Wilson was taken to jail, even if he had not searched it at the

---

[52] R. Doc. No. 71-1, at 19:9–:10.

scene of the arrest.[53]Accordingly, "there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct." *Walker*, 49 F.4th at 909.

As to the second prong, the officer at the second hearing testified that he did not obtain a warrant for the backpack because he believed it was a justified search incident to arrest, and that he believed additional evidence of the crime of possession of a concealed weapon might be found in the backpack.[54] As in *Trogdon*, therefore, the officers "could have obtained a warrant but did not do so . . . because [they] had probable cause to search the backpack incident to arrest." *Trogdon*, 2022 WL 2093858, at *2. The officer's statement that he believed there might be additional evidence of the concealed weapon in the backpack further shows that the matter was still under investigation. Moreover, the officer's statement that he would have had to search the bag for inventory purposes shows that he "was at least disposed to execute an alternative plan." *Baez*, 983 F.3d at 1040. Accordingly, the Court concludes that the search of the backpack was justified under the inevitable discovery doctrine.[55] Because the Court so concludes, it does not reach the question of whether the search of Wilson's backpack was a proper search incident to arrest.

Because the Court concludes that both the initial stop and the search of the backpack were lawful, it must reject Wilson's contention that the evidence discovered

---

[53] R. Doc. No. 79, at 8:16–:21.

[54] *Id.* at 7:13–10:6.

[55] Wilson argues that "the backpack clearly was not searched for inventory purposes as no inventory paperwork was produced by the Government," but he does not make any arguments as to the inevitable discovery doctrine.

from the subsequent search of his apartment and his post-arrest statements should be suppressed as fruit of the poisonous tree.[56]

### III.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Wilson's motions[57] to suppress are **DENIED.**

New Orleans, Louisiana, May 23, 2023.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[56] The Court further notes, however, that even if any of the physical evidence was suppressed as fruit of the poisonous tree, Wilson's statements regarding his lack of knowledge as to the whereabouts of Fernandez would not be suppressed because they constitute the crime of making a false statement to a federal agent, as charged in Count 6. *See United States v. Garcia-Jordan*, 860 F.2d 159, 160 (5th Cir. 1988) ("A person who is stopped or detained illegally is not immunized from prosecution for crimes committed during his detention period."); *accord United States v. Smith*, 7 F.3d 1164, 1167 (5th Cir. 1993).

[57] R. Doc. Nos. 30, 67.